# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Maurice Dawkins, Appellant,

v.

James A. Sell, Respondent.

Appellate Case No. 2017-002520

———————————

Appeal From Hampton County
Roger M. Young, Sr., Circuit Court Judge

———————————

Opinion No. 5857
Submitted June 1, 2020 – Filed September 1, 2021

———————————

## AFFIRMED

———————————

Richard Alexander Murdaugh and William Franklin
Barnes, III, both of Peters Murdaugh Parker Eltzroth &
Detrick, PA, of Hampton, for Appellant.

Kelly Dennis Dean and Ernest Mitchell Griffith, both of
Griffith Freeman & Liipfert, LLC, of Beaufort, for
Respondent.

———————————

**WILLIAMS, J.:**  In this negligence action against James A. Sell, Maurice
Dawkins appeals the trial court's denial of his motions for a directed verdict, a
judgment notwithstanding the verdict (JNOV), and a new trial.  Dawkins argues
the trial court erred in denying his motions for a directed verdict and JNOV on (1)
Sell's affirmative defense of Dennis Owens's intervening and superseding
negligence and (2) Sell's negligence.  Dawkins also asserts the trial court erred in
denying his motion for a new trial because (1) the jury instruction on intervening

and superseding negligence was unwarranted, (2) Sell improperly published Dawkins's interrogatory answer, and (3) Sell exceeded the empty-chair defense. We affirm.

## FACTS/PROCEDURAL HISTORY

This matter arises out of an automobile accident that occurred on I-95 in the morning hours of August 21, 2010.  Sell, who was sixty-one years old at the time, was helping his son move from Ohio to Georgia, and he was driving a moving truck (Moving Truck) with his grandson.  Sell began driving the truck around 11:30 A.M. on August 20, and he stopped a few times to rest and help repair his son's vehicle.  Between 3:30 and 4:00 A.M. on August 21, while it was raining, Sell lost control of the Moving Truck when the front right tire veered off the lane of travel into the emergency lane.  Sell attempted to return the Moving Truck to the lane of travel, but the truck overturned and came to rest blocking both lanes of travel, resulting in the emergency lane being the only navigable path around the Moving Truck.

Multiple individuals, including Dawkins, stopped to render aid.  While these individuals were helping Sell and his grandson exit the vehicle and ensuring they were uninjured, between ten to twenty other vehicles and one to three tractor-trailer trucks passed the Moving Truck via the emergency lane.  Approximately five to ten minutes after the Moving Truck overturned, a tractor-trailer truck (Semi) owned by Pierce National, Inc. and operated by Owens collided with the Moving Truck, causing it to strike and injure Sell, Dawkins, and the other drivers rendering aid.

Dawkins filed a complaint against Sell, Owens, and Pierce National and amended it twice.  Dawkins asserted, among other claims, that Sell and Owens were both negligent in their operation of their respective vehicles and their negligence caused him harm.  Sell filed answers to Dawkins's complaints and asserted, among other defenses, that Owens's negligence intervened and superseded any negligence on his part.  Additionally, Sell asserted a cross-claim against Pierce National and Owens contending he had been injured by their negligence.  Prior to trial, Pierce National and Owens settled with Dawkins and Sell.

The trial occurred from October 9 through 12, 2017.  Prior to trial, Dawkins moved in limine to exclude evidence generally related to the prior inclusion of Pierce National and Owens in the trial and their settlement.  The trial court excluded some evidence that was agreed upon by the parties but denied the motion to exclude the

remaining evidence. After Dawkins rested, Sell published portions of Owens's deposition relating to his conduct prior to the accident and called John W. Pinckney, an expert in motor carrier safety and compliance, to testify regarding Owens's conduct. At the close of evidence, both parties moved for a directed verdict on Sell's intervening and superseding negligence defense, and the court denied both motions. Dawkins also moved for a directed verdict on the issue of Sell's negligence, which the court also denied. The trial court instructed the jury on the defense of intervening and superseding negligence and other particular statutes that Dawkins claimed Sell violated. After deliberating, the jury issued a general verdict for Sell. Dawkins moved for JNOV or a new trial in the alternative, both of which the trial court denied. This appeal followed.

## ISSUES ON APPEAL

I.      Did the trial court err in denying Dawkins's motions for a directed verdict and JNOV on the issue of Sell's affirmative defense of Owens's intervening and superseding negligence?

II.     Did the trial court err in denying Dawkins's motions for a directed verdict and JNOV on the issue of Sell's negligence?

III.    Did the trial court err in denying Dawkins's motion for a new trial because the jury charge on intervening and superseding negligence was unwarranted?

IV.     Did the trial court err in denying Dawkins's motion for a new trial because Sell improperly published Dawkins's interrogatory answers identifying a trucking expert previously retained by Dawkins?

V.      Did the trial court err in denying Dawkins's motion for a new trial because Sell exceeded the bounds of the empty-chair defense?

## STANDARD OF REVIEW

A negligence action is an action at law. *Hartman v. Jensen's, Inc.*, 277 S.C. 501, 502, 289 S.E.2d 648, 648 (1982). On appeal from an action at law tried by a jury, appellate courts correct errors of law and do not disturb the jury's factual findings unless the record reveals no evidence reasonably supporting those findings. *Wright v. Craft*, 372 S.C. 1, 18, 640 S.E.2d 486, 495 (Ct. App. 2006).

When ruling on directed verdict or JNOV motions, "the [trial] court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party" and must deny the motions "[i]f the evidence at trial yields more than one reasonable inference or its inference is in doubt." *Kunst v. Loree*, 424 S.C. 24, 37–38, 817 S.E.2d 295, 301–02 (Ct. App. 2018). We apply the same standard on appeal. *Wright*, 372 S.C. at 18, 640 S.E.2d at 495. Neither the trial court nor this court has the authority to make credibility determinations or resolve conflicting evidence. *Kunst*, 424 S.C. at 38, 817 S.E.2d at 302. The trial court's ruling on a directed verdict or JNOV motion will be reversed only if the ruling is governed by an error of law or no evidence supports the ruling. *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 42, 691 S.E.2d 135, 145 (2010).

"[T]he appellate court reviews a denial of a new trial motion for an abuse of discretion." *Kunst*, 424 S.C. at 38, 817 S.E.2d at 302 (quoting *Duncan v. Hampton Cnty. Sch. Dist. No. 2*, 335 S.C. 535, 547, 517 S.E.2d 449, 455 (Ct. App. 1999)). "An abuse of discretion occurs when the trial court's order is controlled by an error of law or when there is no evidentiary support for the trial court's factual conclusions." *Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 536, 787 S.E.2d 485, 495 (2016). "In determining whether the [trial] court erred in denying a motion for a new trial, the appellate court must consider the testimony and reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Kunst*, 424 S.C. at 38, 817 S.E.2d at 302.

## LAW/ANALYSIS

### I. Dawkins's Motions for a Directed Verdict and JNOV

#### A. Intervening and Superseding Negligence

Dawkins argues the trial court erred in denying his motions for a directed verdict and JNOV on Sell's intervening and superseding negligence defense. We disagree.

A plaintiff must prove three elements on a negligence claim: "(1) a duty of care owed by [the] defendant to [the] plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 368–69, 635 S.E.2d 97, 101 (2006). Proximate cause is ordinarily a question of fact for the jury and "requires proof of: (1) causation-in-fact, and (2) legal cause." *Id.* at 369, 635 S.E.2d at 101; *see Gause v. Smithers*, 403 S.C. 140, 150, 742 S.E.2d 644, 649 (2013) ("Only in rare or exceptional cases may the issue of proximate cause be decided as a matter of law."

(quoting *Bailey v. Segars*, 346 S.C. 359, 367, 550 S.E.2d 910, 914 (Ct. App. 2001))). "Causation-in-fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence, and legal cause is proved by establishing foreseeability." *Baggerly*, 370 S.C. at 369, 365 S.E.2d at 101. Foreseeability "is determined by looking to the natural and probable consequences of the defendant's conduct." *Gause*, 403 S.C. at 150, 742 S.E.2d at 649.

"Evidence of an independent negligent act of a third party is directed to the question of proximate cause." *Matthews v. Porter*, 239 S.C. 620, 628, 124 S.E.2d 321, 325 (1962). "For an intervening force to be a superseding cause that relieves an actor from liability, the intervening cause must be a cause that could not have been reasonably foreseen or anticipated." *Stephens v. CSX Transp., Inc.*, 415 S.C. 182, 205, 781 S.E.2d 534, 546 (2015) (quoting *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 467, 494 S.E.2d 835, 844 (Ct. App. 1997)). If the original tortfeasor's "negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause." *Gibson v. Gross*, 280 S.C. 194, 197, 311 S.E.2d 736, 739 (Ct. App. 1983) (quoting *Locklear v. Se. Stages, Inc.*, 193 S.C. 309, 318, 8 S.E.2d 321, 325 (1940)). The defense of intervening third-party negligence ordinarily presents a question of fact for the jury and only rarely becomes a question of law for the court to determine. *See Small v. Pioneer Mach., Inc.*, 316 S.C. 479, 489, 450 S.E.2d 609, 615 (Ct. App. 1994); *id.* at 491, 450 S.E.2d at 616 (holding it was error for the trial court to direct a verdict in favor of defendants on the ground of intervening third-party negligence because the record contained some evidence the third-party's negligence was foreseeable).

### i.     Admission in Pleading

First, Dawkins argues the trial court erred because Sell admitted in his cross-claim that Owens's actions were foreseeable. We disagree.

"It is well settled that parties are judicially bound by their pleadings unless withdrawn, altered or stricken by amendment or otherwise." *Charleston Cnty. Sch. Dist. v. Laidlaw Transit, Inc.*, 348 S.C. 420, 425, 559 S.E.2d 362, 364 (Ct. App. 2001) (quoting *Postal v. Mann*, 308 S.C. 385, 387, 418 S.E.2d 322, 323 (Ct. App. 1992)). "Any allegations, statements, or admissions contained in a pleading are conclusive against the pleader, and a party cannot subsequently take a contrary or inconsistent position." *Id.*

In Sell's cross-claims against Pierce National and Owens, he asserted they were negligent in multiple ways and he suffered damages "as a direct and proximate result of" their conduct. In answering Dawkins's complaints, Sell asserted as an affirmative defense that Owens's negligence intervened and superseded any negligence on his part. Dawkins argues that Sell cannot claim Owens's actions were foreseeable in his cross-claim while also claiming Owens's actions were unforeseeable in his defense against Dawkins's claim.

Dawkins mischaracterizes Sell's pleadings. Sell does not assert in his cross-claim that Owens's *actions* were foreseeable; rather, he asserts *his injuries* were *the foreseeable result* of Owens's alleged negligent actions. *See Baggerly*, 370 S.C. at 368–69, 635 S.E.2d at 101 (stating the third element of a negligence action is the breach of the duty proximately causing the plaintiff's damages). In the same pleading, Sell asserts Owens's negligent actions were an unforeseeable result of Sell's alleged negligent conduct and therefore an intervening and superseding cause of Dawkins's injuries. *See Stephens*, 415 S.C. at 205, 781 S.E.2d at 546 (stating the intervening negligence of a third party supersedes the negligence of the defendant when the third party's negligence could not have been reasonably foreseen). Sell's claim that his injuries were the foreseeable result of Owens's negligence is not equivalent to asserting that Owens's negligence was the foreseeable result of Sell's alleged negligence. Therefore, we find the trial court did not err in denying Dawkins's motions for a directed verdict and JNOV on this ground.

### ii.    Reasonable Inference from Evidence

Dawkins also asserts the trial court erred because the only reasonable inference drawn from the evidence is that Owens's negligence and collision with the Moving Truck was a foreseeable result of Sell's negligence. Dawkins relies on our supreme court's opinion in *Matthews v. Porter*, which he asserts contains nearly identical facts to the case at issue. We disagree.

In *Matthews*, our supreme court affirmed the denial of Porter's motions for a directed verdict, JNOV, and a new trial on the issue of intervening and superseding negligence. 239 S.C. at 631–32, 124 S.E.2d at 327. In that case, Porter and a third individual were involved in an automobile collision that blocked the lane of traffic, making the roadway impassable. *Id.* at 623, 629, 124 S.E.2d at 322, 326. Matthews stopped to render assistance, and while she was providing aid, a fourth individual—McKnight—sideswiped another car and pinned her between his car and Porter's car. *Id.* at 623, 124 S.E.2d at 322. Porter moved for a directed verdict

on the ground that McKnight was an intervening and superseding negligent cause, but the trial court denied the motion, and the jury ultimately issued a verdict in Matthew's favor. *Id.* at 624, 124 S.E.2d at 323. Our supreme court, reviewing the evidence in the light most favorable to Matthews, affirmed the denial of Porter's motions because there was sufficient evidence to raise a question of fact as to whether McKnight's negligence was an intervening and superseding cause of Matthews's injuries. *Id.* at 625, 628–32, 124 S.E.2d at 323, 325–27. Because the evidence was susceptible to more than one inference, the court held it could not find as a matter of law that McKnight's negligence superseded Porter's negligence and affirmed the trial court's denial of Porter's motions. *Id.* at 632, 124 S.E.2d at 327.

However, in *Gibson v. Gross*, this court held the evidence supported a directed verdict in favor of the defendant on the issue of intervening and superseding negligence. 280 S.C. at 197–98, 311 S.E.2d at 739. In that case, Gross was involved in accident that left his vehicle resting on the traveled portion of the road, and Gibson stopped to lend assistance. *Id.* at 195, 311 S.E.2d at 737. Gross took no action to warn other drivers of his disabled vehicle, and while Gibson was assisting, another individual, Edwards, struck Gibson with his vehicle. *Id.* at 195, 311 S.E.2d at 737–38. Gross asserted he was not negligent and even if he was, Edwards was negligent and was an intervening and superseding cause of Gibson's injuries. *Id.* at 196, 311 S.E.2d at 738. The trial court granted a nonsuit in favor of Gross because no evidence indicated Gross's alleged negligence proximately causes Gibson's injuries and any potential negligence "'was only an indirect or remote cause' of Gibson's injury." *Id.* at 195, 311 S.E.2d at 738. This court noted the first tortfeasor's negligence is an "indirect or remote cause" when it merely creates "a condition of affairs" in which the second tortfeasor's negligence intervenes and causes the injury. *Id.* at 197–98, 311 S.E.2d at 739 (quoting *Locklear*, 193 S.C. at 318, 8 S.E.2d at 325). The court held Gross could not have foreseen that Edwards would have negligently collided with Gibson and affirmed the trial court. *Id.* Upon a petition for rehearing, the court interpreted and distinguished *Matthews*. *Id.* at 198–99, 311 S.E.2d at 739. The court stated the cases superficially mirrored each other but noted key differences, such as the fact that in *Matthews*, the vehicles "*completely* blocked a lane of the highway" but only one lane of a four-lane highway was blocked in *Gross*. *Id.* at 198, 311 S.E.2d at 739. The court also observed that McKnight testified Porter's failure to warn and blocking of the highway caused McKnight to hit Matthews and that Matthews presented "witnesses whose testimony established an unbroken chain of causation from the negligent act of [Porter] to [her] injuries." *Id.* The court noted there was

no evidence in its case that Edwards struck Gibson because the highway was blocked or that Gross failed to warn him. *Id.*

We find the trial court did not err in denying Dawkins's motions for a directed verdict or JNOV. Similar to the discussion in *Gibson*, we note that the vehicles in *Matthews* blocked the highway and made it impassable. *See Matthews*, 239 S.C. at 628, 124 S.E.2d at 325; *Gibson*, 280 S.C. at 198, 311 S.E.2d at 739. In this case, however, multiple witnesses, including Dawkins and Owens, testified the interstate was not impassable after the Moving Truck overturned because the emergency lane was unblocked and usable. Witnesses, including Dawkins, also testified other vehicles used the emergency lane to safely avoid the Moving Truck prior to Owens's collision. Conversely, Owens testified in his deposition that he was watching the painted lines—not scanning the road for obstacles—and traveling around sixty-five miles per hour, which was three miles per hour under the maximum possible speed for the Semi due to a speed cap placed on its engine, while driving at night in rain. Owens also he said he struck the Moving Truck traveling around sixty-five miles per hour. Owens never testified that he was unable to avoid the Moving Truck or attributed his collision with the Moving Truck to some fault of Sell. Instead, he testified he collided with the Moving Truck after unsuccessfully applying his brakes. Pinckney—Sell's expert witness—opined Owens breached his duty of prudent driving by not scanning the road and overdriving his headlights.[1] Additionally, Pinckney further opined that Owens was a fatigued driver because evidence showed that on the afternoon preceding the collision, Owens picked up a shipment at the same time his driving log showed he was resting in his bunk, which was a violation of Federal Motor Carrier Safety Regulations. When viewed in the light most favorable to Sell, we find the evidence presented a reasonable inference that Owens's negligence was not foreseeable as a matter of law and Sell's negligence merely created a "condition of affairs" in which Owens's subsequent negligence caused Dawkins's injuries. *See Gibson*, 280 S.C. at 197, 311 S.E.2d at 739 ("When the negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause." (quoting *Locklear*, 193 S.C. at 318, 8 S.E.2d at 325)). Accordingly, we hold the trial court did not err in denying Dawkins's motions for a directed

---

[1] Overdriving one's headlights means driving at a rate of speed that makes it impossible to stop the vehicle within the range of sight provided by the headlights. *See Gautreaux v. Orgeron*, 84 So. 2d 632, 633 (La. Ct. App. 1955).

verdict or JNOV on Sell's intervening and superseding negligence defense, and we affirm the trial court on this issue.

## B.    Sell's Negligence

Dawkins argues the trial court erred in denying his motions for a directed verdict and JNOV on the issue of Sell's negligence. Dawkins asserts the trial court should have held as a matter of law that Sell was negligent because the evidence only supported the inference that Sell failed to maintain proper control of the Moving Truck. We disagree.

Dawkins asserts the case of *Fettler v. Gentner* is factually similar to this case and controls this issue. 396 S.C. 461, 722 S.E.2d 26, (Ct. App. 2012). In that case, the Fettlers stopped at a yield sign due to an oncoming car, and Gentner rear-ended them. *Id.* at 461, 465, 722 S.E.2d at 28. The Fettlers moved for a directed verdict on the issue of Gentner's negligence, which the trial court denied. *Id.* at 465–66. 722 S.E.2d at 28–29. On appeal, this court noted Gentner admitted he took his eyes off the road and failed to keep a lookout after the Fettlers reached the yield sign. *Id.* at 467, 722 S.E.2d at 30. Because the evidence was not susceptible to more than one reasonable inference on the issue of Gentner's negligence, this court reversed the denial of Fettler's directed verdict. *Id.* at 468–69, 722 S.E.2d at 30.

We find *Fettler* is distinguishable from the instant case. In *Fettler*, Gentner admitted he took his eyes off his lane of travel and Fettler's vehicle. *Id.* Although Sell stated he was responsible for overturning the Moving Truck, this is not the same as (1) admitting he breached his duty of care or (2) Gentner's admission that he took his eyes off his lane of travel and Fettler's vehicle while continuing to approach it. Additionally, when considered in the light most favorable to Sell, the record contains evidence creating an inference that Sell was not negligent. Sell testified he drove "considerably slower than [he did] in a car" because it was raining and the steering wheel "seemed to be a little bit loose, which made the truck tend to sway a little bit." Sell also stated that when the Moving Truck's tire veered into the emergency lane, he tried to steer the tire back onto the road and "steered a little bit more" when the tire "did[ not] seem to respond as quickly as [he] thought" it should. He asserted that he had traveled a lot for his work and was familiar with knowing when to stop and that although he was somewhat tired and it had been a long day, he did not believe it was unsafe for him to be driving at that time. He further testified that in addition to stopping for two hours earlier in the day due to his son having vehicle trouble, he stopped twice to rest for twenty to thirty minutes—one of which was around twenty to thirty minutes before the

accident.  Sell did not make any concession similar to Gentner's admission that he removed his eyes from the road.  Therefore, we find this evidence, when viewed in the light most favorable to Sell, creates an inference that he was not negligent.  *See Wright*, 372 S.C. at 18, 640 S.E.2d at 496 ("On appeal from an order denying a directed verdict [or JNOV], an appellate court views the evidence and all reasonable inferences in a light most favorable to the non-moving party.").  Accordingly, the trial court did not err in denying Dawkins's motions for a directed verdict and JNOV, and we affirm.[2]

---

[2] Dawkins also argues only one reasonable inference could be drawn regarding Sell's negligence due to his failure to comply with a statutory requirement of placing warning devices to warn oncoming drivers of the overturned Moving Truck.  *See* S.C. Code Ann. § 56-5-5090 (2018) (requiring the driver of certain vehicles to utilize warning devices, such as lighted flares or electric lanterns, if the vehicle is disabled upon the traveled portion of a highway or the shoulder).  However, this argument is unpreserved.  At the close of evidence, Dawkins only argued he should be given a directed verdict "on the issue that [Sell] breached a duty in overturning the truck, blocking both southbound lanes in the rain at night," and he did not argue that the court should direct a verdict on the issue of negligence because Sell failed to set out warning devices.  *See I'On, L.L.C. v. Town of Mount Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("[The] preservation requirement . . . is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and *arguments*." (emphasis added)); *Scoggins v. McClellion*, 321 S.C. 264, 267, 468 S.E.2d 12, 14 (Ct. App. 1996) (per curiam) (holding an appellate court will not consider an issue on appeal from the denial of a directed verdict if the issue was not raised in a directed verdict motion at trial).  Dawkins did not raise the statute to support his motion for a directed verdict until his posttrial motion for JNOV.  *See Duncan v. Hampton Cnty. Sch. Dist. No. 2*, 335 S.C. 535, 545, 517 S.E.2d 449, 454 (Ct. App. 1999) ("A motion for [JNOV] under Rule 50(b)[, SCRCP,] is a renewal of the directed verdict motion and is limited to the grounds asserted in the directed verdict motion." (second alteration in original) (quoting *Glover v. N.C. Mut. Life Ins. Co.*, 295 S.C. 251, 256, 368 S.E.2d 68, 72 (Ct. App. 1988))); *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007)) ("[A]n issue may not be raised for the first time in a [posttrial] motion.").  Accordingly, this ground is not preserved for our review, and we affirm the trial court.

## II.     Dawkins's Motion for a New Trial

Dawkins asserts the trial court erred in denying his motion for a new trial. We disagree.

### A.     Jury Instruction

Dawkins contends the trial court erred in denying his motion for a new trial because the court instructed the jury on intervening and superseding negligence, which he asserts was unwarranted. Because we affirm above the trial court's denial of Dawkins's directed verdict and JNOV motions on this ground, we similarly affirm the trial court's denial of his motion for a new trial. *See Stephens*, 415 S.C. at 204–05, 781 S.E.2d at 546 (finding the trial court did not err in charging the jury on intervening and superseding negligence because evidence that a third party was unforeseeably negligent supported the charge).

### B.     Interrogatory Response

Dawkins argues the trial court improperly denied his motion for a new trial because the court erred in allowing Sell to publish an answer to an interrogatory identifying a trucking expert that Dawkins previously intended to use against Pierce National and Owens. Dawkins argues it was error to publish the answer because it identified a nonparty with whom Dawkins had previously settled. We disagree.

Answers to interrogatories can be used in trials "to the extent permitted by the rules of evidence." *See* Rule 33(d), SCRCP. Generally, relevant evidence is admissible, and irrelevant evidence is inadmissible. Rule 402, SCRE. Relevant evidence is evidence that tends to make the existence of any fact of consequence for the case more or less probable. Rule 401, SCRE. Admitting evidence is within the trial court's sound discretion "and will not be disturbed absent an abuse of discretion and a showing of prejudice." *Fountain v. Fred's, Inc.*, 429 S.C. 533, 560, 839 S.E.2d 475, 490 (Ct. App. 2020) (quoting *Oconee Roller Mills, Inc. v. Spitzer*, 300 S.C. 358, 360, 387 S.E.2d 718, 719 (Ct. App. 1990)).

We find the trial court did not abuse its discretion in admitting the answer. In his response to Pierce National's and Owens's interrogatories, Dawkins indicated he was prepared to call an expert named David L. Dorrity to testify regarding Owens's operation of the Semi and compliance with federal laws. This fact, indicating Dawkins believed Owens was negligent, made the fact that Owens was negligent

more probable. *See* Rule 401. Owens's negligence was a "fact of consequence" because it was a necessary element of Sell's affirmative defense of intervening and superseding negligence. *Id.* Because Owens's negligence remained relevant, the trial court did not abuse its discretion in admitting the interrogatory answer. *See Robinson*, 416 S.C. at 536, 787 S.E.2d at 495 ("An abuse of discretion occurs when the trial court's order is controlled by an error of law . . . ."). Moreover, any error in admitting the answer did not prejudice Dawkins because whether Dawkins was prepared to allege Owens violated federal motor laws was cumulative to the evidence offered by Sell's expert Pinckney that Owens did violate such laws. *See Campbell v. Jordan*, 382 S.C. 445, 453, 675 S.E.2d 801, 805 (Ct. App. 2009) ("When improperly admitted evidence is merely cumulative, no prejudice exists, and therefore, the admission is not reversible error."). Accordingly, the trial court properly denied Dawkins's motion for a new trial on this ground, and we affirm.[3]

### C. Empty-Chair Defense

Dawkins argues the trial court erred in denying his motion for a new trial after allowing Sell to exceed the bounds of the empty-chair defense. Dawkins asserts the trial court "enabled Sell to fashion and extract a benefit from the fact that Pierce National and Owens were not defendants." Dawkins avers Sell exceeded the bounds of the empty-chair defense by presenting evidence of Owens's negligence. Dawkins contends because Sell was entitled to a setoff for any amount Dawkins received from his settlement with Pierce National and Owens, the issues surrounding Pierce National and Owens were irrelevant. We disagree.

The empty-chair defense is the defendant's "right to assert another potential tortfeasor, *whether a party or not*, contributed to the alleged injury or damages" and was codified in the Uniform Contribution Among Tortfeasors Act (the Act) at section 15-38-15 of the South Carolina Code (Supp. 2020). *Smith v. Tiffany*, 419 S.C. 548, 557, 799 S.E.2d 479, 484 (2017) (emphasis added) (quoting § 15-38-15(D)). Dawkins relies on *Tiffany* for the proposition that the defense "is

---

[3] Dawkins also claims the trial court improperly (1) allowed Sell to cross-examine Dawkins as to the allegations he raised as to Owens in his complaint over his objection and (2) admitted portions of Owens's deposition over his objections on relevancy. However, Dawkins does not list these as issues in his statement of issues on appeal, and we decline to address them. *See* Rule 208(b)(1)(B), SCACR ("The statement shall be concise and direct as to each issue . . . . Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

not boundless and the non-settling defendant cannot expand the scope of the case and make evidence relevant by the fact [that] another tortfeasor settled."  However, *Tiffany* is distinguishable.  In that case, the court interpreted the Act on appeal of a defendant's request to join as a party an individual—with whom plaintiff had already settled and released from the action—in order to allow the jury to apportion fault.  *Id.* at 554–55, 799 S.E.2d at 482–83.  The court held the plain language of the Act precluded the defendant from joining the prior codefendant. *Id.* at 555–59, 799 S.E.2d at 483–85.

Because *Tiffany* did not discuss the empty-chair defense in the context of an intervening and superseding negligence defense or provide the parameters of the defense, it does not support Dawkins's argument.  The evidence Sell offered of Pierce National's and Owens's negligence was relevant because it related to Sell's assertion of the affirmative defense of intervening and superseding negligence, for which Sell had the burden of proof, not because they settled.  *See Small*, 316 S.C. at 481, 450 S.E.2d at 611 (noting intervening and superseding negligence is an affirmative defense); *Cole v. S.C. Elec. & Gas, Inc.*, 355 S.C. 183, 195, 584 S.E.2d 405, 412 (Ct. App. 2003) ("It is well established that a party pleading an affirmative defense has the burden of proving it."), *aff'd as modified on other grounds*, 362 S.C. 445, 608 S.E.2d 859 (2005).  The fact that Sell may be entitled to a setoff of any judgment the jury enters against him does not preclude him from offering evidence to show the jury why it should not enter a judgment against him at all.  *See* § 15-38-15(D) ("A defendant shall retain the right to assert that another potential tortfeasor, whether or not a party, contributed to the alleged injury or damages and/or may be liable for any or all of the damages alleged by any other party.").  Therefore, we find Sell did not "fashion and extract a benefit from the fact that Pierce National and Owens" had settled and did not exceed the empty-chair defense.  *See Riley v. Ford Motor Co.*, 414 S.C. 185, 197–98, 777 S.E.2d 824, 831 (2015) (finding the defendant improperly extracted a benefit from the settlement between the plaintiff and a prior codefendant when the court reapportioned the allocation of settlement proceeds between the settling parties in a manner that decreased the defendant's liability).

Dawkins also asserts that after allowing Sell to present evidence that Dawkins had sued Pierce National and Owens, the court should have allowed him to reveal to the jury that he had settled with Pierce National and Owens as well as the amount of the settlement.  Dawkins asserts that by allowing the jury to learn he originally sued Pierce National and Owens without instructing the jury (1) of his settlement with both parties, (2) of the amount of the settlement, and (3) that Sell would receive credit for that amount, the court "undoubtedly left the jury with the belief

that Dawkins had been fully compensated by Pierce National and Owens." This argument is unpersuasive because mere knowledge of a suit between Dawkins and the former defendants would not "undoubtedly" lead the jury to assume Dawkins had been fully compensated. Moreover, Dawkins cites no supporting authority for this proposition, and this request goes beyond the parameters set forth in *Lucht v. Youngblood* for the proper procedure when the jury learns the plaintiff previously sued another in the same or a related action. 266 S.C. 127, 221 S.E.2d 854 (1976). In that case, our supreme court stated that when there is a concern that admissible evidence could indirectly inform the jury that another defendant has been released from the action due to a settlement, the court should admit the evidence and "simultaneously charge the jury that a plaintiff may choose which defendant he wishes to sue and that if any actions against a former defendant are relevant, they would be a matter for the court and not for the jury." *Id.* at 135, 221 S.E.2d at 858. Dawkins did not request the trial court issue such an instruction, and his request to disclose the amount of the settlement extends beyond the guidance provided by *Lucht*, which specifically stated that evidence of the amount should not be presented to the jury. *See id.* at 134, 221 S.E.2d at 858. In light of the above reasoning, the trial court did not err in denying Dawkins's motion for a new trial on this ground. Thus, we affirm the trial court on this issue.

**CONCLUSION**

Based on the foregoing, the trial court is

**AFFIRMED.**[4]

**KONDUROS and HILL, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.